## Smith v. Straton's Administrator et al.

(Decided February 22, 1929.)

STATON & KEESEE for appellant.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to April 24, 1926, the Turkey Creek Lumber Company was a manufacturer of lumber in Pike county, but whether it was a partnership or a corporation we are unable to discover from the pleadings or any other part of the record. On January 6, in that year, it sold

to appellant and defendant below, Will M. Smith, a quantity of lumber at $20 per thousand, the total amount of the purchase aggregating between $5,000 and $6,000, the exact amount not being shown by the record. The purchase was on credit, but no notes evidencing the price were executed until the first date above mentioned, and on that day notes were executed by defendant in various sums, as hereinafter explained, aggregating the total amount of the purchase, and all of which were made payable to the Turkey Creek Lumber Company. H. H. Funk. K. C. Shelton, Ballard Harris, and Hume Fields were the owners of the Turkey Creek Lumber Company, either as partners if it was a partnership, or as stockholders if it was a corporation. The concern dissolved on the date the notes were executed (April 24, 1926), and they were made for such amounts as each of the interested parties was due from the concern upon a settlement of its affairs, and, as so executed, they were then indorsed by the Turkey Creek Lumber Company to the partner or stockholder who was entitled to the amount represented by it as found by such settlement. A mortgage on described property was executed by defendant to the Turkey Creek Lumber Company to secure all of the notes, except the one that was transferred to Funk, and who died before the filing of the actions herein involved, and P. B. Straton was appointed his administrator. The notes were each made due and payable on January 6, 1927, and (though dated April 24, 1926) they stated on their face that they bore interest from January 6, 1926. After maturity they were not paid, and each of the interested parties to whom they were transferred, as above described, filed separate suits on them against defendant, seeking to recover judgment of him thereon, and each of the petitions, except the one filed by Funk's administrator, sought an enforcement of the mortgage lien that defendant had given the payee as security for them.

Separate answers were filed by defendant in each case, and an agreement was made to consolidate them, but it does not appear that any order was entered to that effect though the final judgment indicates a consolidation. The answers are most inartificially drawn and in such a complicated and confused form as to render it exceedingly difficult to determine what was meant; so much so that portions of them are altogether insufficient to constitute a defense. The entire first paragraph of

the original answers consisted of these words: "Come the defendant Will M. Smith, and (for) answer to the plaintiff's petition and for his separate answer he denies that he is indebted to plaintiff in the sum of $1,943.99, or any other sum or amount." The court, of course, properly sustained the demurrer to that paragraph of each answer. Their second paragraph attempted to rely on two pro tanto defenses: (a) That, before the purchased lumber was delivered to defendant, the particular plaintiff whose petition was being responded to "possessed himself of some of the lumber, the exact amount of which is unknown to this defendant;" and (b), that, after the purchase and before delivery, the sheriff of Pike county levied upon 60,000 feet of the lumber and sold it for taxes due from the Turkey Creek Lumber Company, and credit was sought, by means of either an offset or counterclaim (we cannot tell which), to the extent of the purchase price of the lumber alleged to have been converted by the individual defendant under defense (a), and also that sold by the sheriff in the tax sale. The court sustained demurrers filed to that paragraph, and defendant declining to plead further, judgment was rendered against him for the amount of each note, with interest from January 6, 1926, and protest fees on each note, they having been made payable at a duly organized bank, and payment refused, followed by protest and notice. To reverse those judgments, defendant prosecutes this appeal. No protest fees were recoverable, since protest was waived in the *face* of the notes.

The record does not disclose the ground upon which the court sustained the demurrer to all of the second paragraph of the answers in which all sufficiently pleaded facts must be admitted. Of course, defense (a) was wholly insufficient from any standpoint. There was no allegation as to the amount of lumber or its value that each individual plaintiff possessed himself of, nor was there any averment that the same was wrongful, and, so far as the pleading is concerned, the acquiring of such possession may have been rightful and for which defendant would have no cause of action against either of plaintiffs or his assignor.

Defense (b), also incorporated in the second paragraph of the answers, contained much surplusage, and we are niformed by briefs that the court sustained the demurrer thereto, upon the ground that it was not alleged

therein the amount of the taxes to collect which the sheriff sold the lumber, nor for what year the assessment was made, nor whether the levy was properly made; but, to our minds, all of the allegations with reference to the sale of the lumber by the sheriff, was surplusage pure and simple, and had no place in the pleading. However, it does contain enough to charge that the Turkey Creek Lumber Company, the payee in the notes, failed to deliver to defendant 60,000 feet of lumber he purchased from it, and which was of the value of $1,200. The cause or reason for such failure (which in this case was alleged to be the sale of it by the sheriff) has no place in the pleading, since the legal defense was and is that the seller of the lumber, from some cause, no matter what, failed to deliver to defendant the designated quantity of lumber of the pleaded value of $1,200. Accepting that pleading as true, which must be done on demurrer, defendant was entitled to a credit on his notes for that amount, and the court erred in sustaining the demurrer thereto.

But it is stated in brief for appellees that the court in rendering the judgments gave defendant credit for the amount of the taxes due from the lumber company, and which it is claimed amounted to only $268.13, plus $31.20, cost and penalty, and in the final judgment in consolidated form (there appearing to have been others rendered in each individual case), it was recited "subject to a credit for the taxes, interest and penalty, assessed against the Turkey Creek Lumber Company and which was paid by defendant," and also that "the defendant in the foregoing case is entitled to have the total sum of the above indebtedness credited with $268.13, the taxes chargeable against the Turkey Creek Lumber Company, together with the further sum of $31.20 interest & penalty & cost, Tax Ticket No. 8075, Turkey Creek L. C. 1926, which was paid by the defendant. Said sum is to be pro-rated and charged against each of the plaintiffs in proportion according to the amount of each judgment."

There is nothing in any pleading filed by either party, or elsewhere in the record, remotely indicating for what that credit was allowed, but, from the excerpts we have taken from the judgment, it would appear that it was for a sum that defendant had paid for the use and benefit of the Turkey Creek Lumber Company, in discharge of some taxes it owed; but, whether it was the same taxes under which the sheriff sold the 60,000 feet of

lumber, or whether it was taxes for a different year and made payable to a different taxing authority, appears nowhere in the record, and all of which is but an illustration of the extreme looseness with which the cases were practiced. For aught that appears from the record, including the pleading, the taxes for which defendant was so given credit was an entirely different item from the one collected by the sheriff in his alleged sale of the 60,000 feet of lumber. However, if that sale represented the same taxes for which the judgment gave defendant credit, there yet remains, according to the allegations of the answer and counterclaim, the difference between $1,200, the value of the lumber sold by the sheriff, and the amount of the credit so given him for which defendant should also receive credit, since the credit to which he would be entitled under the allegations of his pleading was not measured by the amount of the tax bill that the sheriff collected, but by the amount of lumber that he sold in the collection of the taxes. He may have sold $1,200 worth of lumber to collect the sum of $238, the actual amount of the tax bill in his hands, and if true, defendant would be entitled to credit by the value of all the lumber that the sheriff sold, although it was much greater than the amount of the tax bill in his hands. It was the duty of the Turkey Creek Lumber Company to pay its taxes without a levy and sale of any of its property by the sheriff, and, if, through its derelictions, the sheriff was forced to levy upon and sell the property that it had previously sold to defendant, though in lien for the taxes at the time of the sale, all the loss arising from the sale by the sheriff should be borne by it or those of its members or stockholders to whom it assigned the notes and who, by virture of their interest, were not innocent holders of them.

What we so far have said is based entirely upon the uncontroverted allegations in defense (b), in the second paragraph of the answers. From our recitations herein, it will appear that considerable additional pleading should be made in order to a correct presentation of the legal rights of the parties; but, we repeat, enough does appear to show that the court erred in the respects mentioned.

Wherefore the judgments are reversed, with directions to set them aside and for proceedings consistent with this opinion.